UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Office of Consumer Counsel and New England Cable and Telecommunications Association, Inc., *Plaintiffs*, <br><br> *v.* <br><br> Southern New England Telephone Company d/b/a AT&T Connecticut, Inc. and Department of Public Utility Control of the State of Connecticut, *Defendants*. | Civil No. 3:06cv1106 (JBA) LEAD |

**RULING ON MOTION TO AMEND ENTRY OF FINAL JUDGMENT**

Defendant Southern New England Telephone Company, doing business as AT&T Connecticut, Inc. ("AT&T"), moves pursuant to Federal Rule of Civil Procedure 59(e) to amend the final judgment in this case entered on October 9, 2007. AT&T contends that the state regulatory decision which prompted this consolidated litigation was superseded by new legislation on October 1, 2007, which rendered Plaintiffs' claims moot. Because the Court rejects this mootness argument as explained below, AT&T's motion is denied.

**I.  Background**

The Court has issued several previous rulings in this dispute, and assumes a familiarity with the relevant factual background as set out in those decisions. *See Office of Consumer Counsel v. S. New Eng. Tel. Co.*, 502 F. Supp. 2d 277 (D. Conn. 2007) ("*OCC I*"); 515 F. Supp. 2d 269 (D. Conn. 2007) ("*OCC II*"); 514 F. Supp. 2d 345 (D. Conn. 2007) ("*OCC III*"). In light of the post-judgment relief sought by AT&T, however, a review of the procedural history is in order.

Underlying this litigation is a new television service offered by AT&T known as "U-verse," which, unlike traditional cable television, utilizes Internet Protocol ("IP")

packetization to transmit digital video signals over its network. Given this technological distinction, the Connecticut Department of Public Utility Control ("DPUC," now a defendant) initiated proceedings to address whether U-verse constitutes a "cable service" as defined in the federal Cable Act, 47 U.S.C. § 522(6), such that the service would be subject to cable regulation in Connecticut. In a written decision issued June 7, 2006, the DPUC found that AT&T's new service "is distinguishable from cable television service" because it "is merely another form of data byte stream transmitted like any other data over the Internet, and as such it is not subject to legacy cable franchising requirements." DPUC Decision at 1. The DPUC thus concluded that AT&T's "IP-based video offering [is] in the public interest" and that U-verse is "not [] a cable service subject to traditional cable regulation." *Id.* at 47.

Plaintiffs Office of Consumer Counsel ("OCC") and New England Cable Television Association ("NECTA") commenced this action on July 19, 2006, which, as previously summarized by the Court, alleged four counts:

> *Count 1* seeks a judicial determination that the DPUC's decision is invalid as preempted by the Cable Act, that AT&T's proposed video service does constitute a "cable service" being offered over a "cable system" by a "cable operator," and that AT&T must therefore obtain a cable franchise prior to providing its service in Connecticut;
>
> *Count 2* seeks a declaration that because the DPUC's decision is preempted, AT&T must comply with the Cable Act and related FCC regulations;
>
> *Count 3* claims that the DPUC's decision is discriminatory in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; and
>
> *Count 4* seeks an alternative declaration that, in the event that the Court holds that AT&T's service does not constitute a "cable service," similar video programming being provided by members of NECTA also do not constitute

"cable service[s]" falling under the ambit of the Cable Act and related regulations.

*OCC I*, 502 F. Supp. 2d at 281 (citations omitted and paragraph breaks added). Contemporaneously, the Cablevision Plaintiffs filed a second complaint, later consolidated with the first case, which also contained four counts:

> *Count 1* seeks a declaration that "[t]he DPUC's determination that AT&T's planned video offering is a not a cable service and that AT&T is thereby exempt from Federal franchising requirements applicable to Cablevision expressly authorizes AT&T to compete against Cablevision in a manner that violates and is preempted by Federal law [and] [u]nder the Supremacy Clause of the United States Constitution, the Decision is preempted and superceded";
>
> *Count 2* seeks a determination that "Title VI of the Federal Communications Act establishes four methods for telephone companies lawfully to offer video programming services [and] [t]he DPUC's conclusion that AT&T may offer video programming services in a fifth manner not provided by Congress violates and is preempted by Federal law [and] [u]nder the Supremacy Clause of the United States Constitution, the Decision is preempted and superceded";
>
> *Count 3* seeks a declaration that the DPUC's decision is discriminatory in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; and
>
> *Count 4* claims violation of civil rights pursuant to 42 U.S.C. § 1983.

*Id.* at 281–82 (citations omitted and paragraph breaks added).

Subsequently, AT&T and the DPUC filed motions to dismiss, and the parties later cross-moved for summary judgment. On July 25, 2006, the Court dismissed Count 4 in each Complaint and struck Cablevision's request for attorney's fees under 47 U.S.C. § 555a(a), but retained Plaintiffs' remaining allegations against challenges on standing, ripeness, and failure-to-state-a-claim grounds. *Id.* at 292. On July 26, the Court granted summary

3

judgment in favor of Plaintiffs, finding that "AT&T constitutes a 'cable operator' providing a 'cable service' over a 'cable system,' as those terms are defined in the Cable Act." *OCC II*, 515 F. Supp. 2d at 282. Consequently, the Court held, "the DPUC's conclusions in its June 7, 2006 Decision to the contrary, and its related determination that AT&T need not comply with the franchising requirement in 47 U.S.C. § 541 and the regulations promulgated thereunder, are in conflict with and are thus preempted by federal law." *Id.*

Defendants then timely moved for reconsideration of this latter ruling, asserting that the Court committed legal error and overlooked critical factual issues. The Court rejected these arguments and denied the motion for reconsideration on October 2, 2007. *OCC III*, 514 F. Supp. 2d at 351. That same day, during a telephonic status conference with the Court, AT&T represented that entry of final judgment would be inappropriate because, it argued, Plaintiffs' claims became moot as a result of a new Connecticut video franchising regime which went into effect on October 1. After the Clerk entered judgment in favor of Plaintiffs on Counts 1 and 2 of the complaints on October 9, AT&T formally moved to amend this final judgment on the same mootness grounds.

By AT&T's description, the state statute at issue—titled "An Act Concerning Certified Competitive Video Service," Public Act No. 07-253, ("the Video Franchise Act")—"creates a new, comprehensive regulatory framework governing video franchising in Connecticut, enabling new entrants like AT&T to obtain franchises to provide video service in competition with incumbent cable providers." (AT&T's Mem. Supp. at 3.) Pursuant to § 2(b) of the Video Franchise Act, AT&T was entitled to apply for a "certificate of video franchise authority" (which it did on October 1) and was granted an interim franchise for the pendency of such application. As part of that application process, AT&T

4

complied with § 2(c)(3) of the Act, which provides that a franchise applicant must affirm

> that [it] agrees to comply with all applicable federal and state statutes and regulations and with all applicable orders of the department, including, but not limited to, those statutes, regulations and orders regarding the provision of video service by certified competitive video service providers and the use and occupation of public rights-of-way in the delivery of the video service by such providers.

Also relevant here, § 12 grants the DPUC "authority to revoke the certificate of video franchise authority if the certified competitive video service provider is found, after a departmental hearing with notice to all interested parties, to be in substantial noncompliance with the requirements of law or department orders."

## II. Discussion

AT&T contends that the Video Franchise Act superseded the DPUC's decision which formed the basis for Plaintiffs' complaints in this dispute. Because the Court's summary judgment ruling was directed at the DPUC's decision which "lost all legal significance on October 1," AT&T argues, "there was thus no longer a live controversy regarding the [DPUC's decision]," rendering "this litigation moot." (AT&T's Mot. at 2.)

### A. Rule 59(e) Procedure

Preliminarily, Plaintiffs argue that this motion is procedurally improper because the grounds for relief pursuant to Rule 59(e) are "narrow and specific" and exclude the merits arguments advanced by AT&T here. (Pls.' Opp'n at 4.) According to Plaintiffs, AT&T's mootness and private-right-of-action arguments are not novel at this stage in the litigation and are therefore not sufficient reasons to amend the entry of judgment. AT&T responds that the motion is proper because (1) the issue of mootness did not exist until the October 1 effective date of the new Video Franchise Act and (2) the defense of failure to state a claim

5

with respect to Count 2 may be raised at any time. (AT&T's Reply at 2–4.)

The cases cited by Plaintiffs on this point are not helpful, for they only confirm the general nature of a Rule 59 remedy—rare, but permissible under certain circumstances. *E.g.*, *White v. N.H. Dept. of Employment Sec.*, 455 U.S. 445, 450 (1982) (noting that Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment") (quotation marks omitted). Similar to a motion for reconsideration, a court can grant relief under Rule 59(e) if necessary to correct a manifest error of law or fact, to recognize an intervening change in the law, or to prevent manifest injustice. 11 C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2810.1 (2d ed. 1995). Under this standard, if the judgment in this case is now erroneous due to the effect of the new state franchising law, then AT&T has a valid basis for seeking this post-judgment relief. Thus, it is necessary to turn to the merits of AT&T's motion.

**B.  Mootness**

The essence of the mootness doctrine is that an Article III case or controversy must exist "through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Mootness can also be characterized as a close relative of another justiciability doctrine—standing—but with a temporal element: "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). "This means that, throughout the litigation,

the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemma*, 523 U.S. 1, 7 (1998) (quoting *Lewis*, 494 U.S. at 477).

In the event that a "case becomes moot pending appellate adjudication, 'the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).[1]  As the party claiming mootness, AT&T "bears [the] heavy burden" of demonstrating the legal and factual bases that render the dispute moot. *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005).

The view of mootness as a cousin of standing is particularly relevant here given that the Court previously analyzed the justiciability of this case in its ruling on Defendants' motions to dismiss. To the Defendants' objection that Plaintiffs had not suffered any non-speculative injury-in-fact, the Court reasoned:

> Here, although plaintiffs do not allege that they have already suffered particularized economic injury, they allege a concrete injury in the form of unfair competition—they have alleged that they are being subjected to DPUC regulation pursuant to the Cable Act and concomitant state franchising and other regulations whereas their competitor, AT&T, is not subjected to the same regulation notwithstanding that it is also offering a "cable service" under the Act, resulting in an uneven playing field. Courts have recognized

---

[1] Citing *Munsingwear*, AT&T further argued in its briefing that the Court should amend the judgment because "AT&T has lost the right and ability to appeal the Court's entry of final judgment on Count I because the DPUC's Decision is no longer legally effective." (AT&T's Mem. Supp. at 8.)  But AT&T retreated from this extreme position at oral argument and conceded that the Second Circuit would have the power to vacate and remand the case with instructions to dismiss should it conclude, upon appellate review, that the litigation is moot.

7

> "that parties suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition."

*OCC I*, 502 F. Supp. 2d at 283 (citations omitted). The Court also concluded that Plaintiffs satisfied the prudential zone-of-interests requirement:

> [Defendants] contend that [the Cable Act is] intended to promote competition, protect the interests of new franchise applicants, and to safeguard cable service consumers/the public. However, applying the [zone-of-interests] requirement as characterized in [*Bennett v. Spear*, 520 U.S. 154, 162–63 (1997)], plaintiffs and their interests are clearly "regulated by" these provisions of the Cable Act. Moreover, the Act more generally includes as one of its stated purposes to "promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. § 521. By its very terms, therefore, cable operators and the nature of their competition are interests contemplated as within the scope of the Act.

*Id.* at 284. Furthermore, the Court rejected AT&T's argument that Count 2 of the OCC/NECTA complaint—seeking an order compelling AT&T to comply with the various requirements imposed by the Cable Act and related regulations—was not yet ripe for judicial review:

> Although the record does not reflect which specific features AT&T is offering/will offer notwithstanding that it is not required to do so by the DPUC, the damage of an allegedly unequal/unfair playing field results from the DPUC's decision; the Court need not wait for a more developed record as to what specific features AT&T may or may not be offering in order to determine the legal issue of whether the service AT&T is providing should subject it to regulation pursuant to the Cable Act. . . . It is the impact of the DPUC's determination that its regulations are inapplicable to AT&T that causes plaintiffs' hardship, and that hardship is not alleviated by the potential that AT&T may choose to voluntarily provide some of the features which the regulations require of plaintiffs.

*Id.* at 285–86.

Thus, the Court concluded that Plaintiffs' claims in Counts 1 and 2 (of both

complaints) were justiciable as properly alleging cognizable injury in the form of unfair competition. This "uneven playing field" form of standing was based on the reality that, contrary to AT&T's suggestion, it was federal law, not state law, at stake in the litigation. In their claims, Plaintiffs sought a declaration preempting the DPUC's conclusion that U-verse was not subject to regulation as a "cable service." The harm stemming from this definitional exclusion was twofold in terms of Plaintiffs' competitive disadvantage: (1) AT&T would not have to obtain a cable franchise for its U-verse service, and (2) AT&T would be exempt from the various statutory and regulatory requirements which apply to cable operators providing cable services over cable systems.

AT&T focuses on the first of these issues, emphasizing that "[t]he effect of the DPUC's Decision was to relieve AT&T of any requirement to obtain a DPUC-issued franchise to offer its U-verse TV service in Connecticut," a finding which AT&T argues was later superseded by the new Video Franchise Act. (AT&T's Reply at 4.) This highlights the central premise of AT&T's mootness argument: "the only legal effect of the [DPUC's decision] was that AT&T did not need a franchise. The DPUC could not have exempted AT&T from federal cable regulations, which are entrusted to the FCC for enforcement." (*Id.* at 4 n.4.) Continuing, AT&T contends:

> To be sure, in deciding that AT&T was not required to obtain a cable franchise, the DPUC necessarily had to conclude that AT&T was not a cable operator under federal law, but the DPUC's legal classification had no effect on AT&T's federal-law obligations other than the franchise requirement. The narrow legal effect of the DPUC's Decision reflects that the DPUC—as a *state* agency—could not have excused AT&T from complying with *federal* cable requirements that are committed to the FCC (or, in certain circumstances, to federal courts) to enforce.

(*Id.* at 6.)

9

This view of the DPUC's determinations conflicts with the text of the decision itself, however. In the summary section, the DPUC explained that it "initiated [the] proceeding mindful of the fact that this is a case of first impression and that no precedent exists in the evaluation of video products proposed by Connecticut's local exchange companies," and also "because [the DPUC] possesses the authority to regulate public service companies and is acting within that authority to render a final Decision interpreting current cable television statutes and regulations." DPUC Decision at 1. The DPUC further explained the basis for its authority to interpret matters of federal law:

> The Department commenced this proceeding . . . to investigate the terms and conditions under which proposed video products may be offered by two incumbent local exchange companies, namely [AT&T] and Verizon. . . . It is a well-established rule of statutory construction that an agency must be given the opportunity to decide a question of its own jurisdiction, particularly where the issue of the agency's authority or jurisdiction over a matter may be aided by its expertise and interpretation of its governing statutes.

*Id.* at 32. Recognizing that these were also matters within the authority of the FCC, the DPUC observed that

> [a]s the parties have duly noted, [AT&T] has repeatedly sought, but has yet to obtain, a ruling from the FCC or any court of competent jurisdiction that the delivery of the new [U-verse] service does not require a cable franchise under Title VI of the Communications Act as amended. The Department also notes that neither the Congressional nor FCC proceedings have produced any final rules or decisions that would further invoke the axiom of federal preemption in this matter. . . . As such, unless and until federal law clearly preempts regulation regarding the delivery of video programming that is IP-based, this Department is acting within its authority to render a final Decision by interpreting the CATV statutes and regulations that it is mandated to enforce and uphold.

*Id.* at 32–33. The DPUC found this interpretative proceeding appropriate because it "is the

exclusive franchising authority over CATV systems in Connecticut, pursuant to federal and state authorization," and therefore is empowered "to enforce the state and federal provisions governing CATV services offered in Connecticut." *Id.* at 33.

With this authority and mandate, the DPUC discussed at length the relevant provisions of federal telecommunications law, outlining its task as follows: "To determine the appropriate regulatory construct applicable to the types of video services Verizon and [AT&T] plan to provide in Connecticut, the Department will examine both offerings in light of the definitions of "cable service" found in federal and state law." *Id.* at 33. Contrary to AT&T's description, the DPUC's interpretation and application of federal law was not merely an ancillary issue: "In the opinion of the Department, the crux of this case lies in examining the definition of 'cable service' [in 47 U.S.C. § 522(6)] to determine whether [AT&T's] offering meets the regulatory classification of cable service." *Id.* at 37–38.

Throughout the decision, the DPUC referenced how it was necessary to appropriately classify the U-verse service in order to determine both the franchising requirements and regulatory obligations which necessary follow from that classification. *See id.* at 7, 11, 13, 15–16, 40–41, 45–47 (discussing additional regulatory issues beyond franchising). In the final "Public Policy" section of the decision, the DPUC acknowledged Cablevision's objections that "the public interest does not support exempting [AT&T] from state cable franchising and regulatory requirements" and "that if [AT&T's] IP-video product is determined to not be a cable service requiring a cable franchise, [AT&T] would have broad freedom to avoid many of the obligations Connecticut has identified as critical for its residents." *Id.* at 45; *see id.* at 45–46 (summarizing NECTA's similar arguments). But the DPUC disagreed and found that public-policy considerations supported allowing AT&T to

11

proceed with its U-verse offering notwithstanding these concerns. *Id.* at 46. For the DPUC, AT&T's expressed "commitment to advancing the interests of municipalities" was sufficient given that "the Department expects nothing less in Connecticut." *Id.* Therefore, the DPUC found U-verse "to not be a cable service subject to traditional cable regulation." *Id.* at 47.

As the DPUC's decision demonstrates, AT&T's assertion that "the DPUC's legal classification had no effect on AT&T's federal-law obligations other than the franchise requirement" is without merit. The parties to that proceeding and the DPUC itself were fully conscious of the various cable service regulations beyond franchising and the fact that the classification of U-verse as not a "cable service" would have multiple effects, not the "only legal effect" AT&T claims. The allegations in Count 2 of the OCC/NECTA complaint recite the numerous federal obligations at issue, including requirements related to political broadcasting, advertising directed to children, parental controls, closed captioning, subscriber privacy, and redlining. (OCC/NECTA Compl. ¶¶ 57–77.) That these federal issues remain live is also confirmed by the provisions in §§ 2 and 12 of the Video Franchise Act specifically requiring compliance with relevant federal statues and regulations.[2]

Thus, even if the issue of what franchising requirements govern AT&T's service in Connecticut became moot with the enactment of the Video Franchise Act on October 1, "the remaining live issues" which flow from the federal classification of U-verse "supply the constitutional requirement of a case or controversy." *Powell*, 395 U.S. at 497. Because

---

[2] AT&T's briefing provides additional support for this conclusion. Citing the federal anti-redlining requirements, AT&T claims that the "Video Franchise Act moots that issue" because it establishes a state-law "enforcement scheme for complaints of redlining." (AT&T's Reply at 6 n.5.) But the absence of state-law counterparts for all the other related federal obligations imposed on cable service providers is precisely why the potential for competitive harm to the Plaintiffs remains.

12

Plaintiffs would still be competitively disadvantaged if AT&T does not have to comply with federal law—which was the consequence of the DPUC's decision—AT&T has failed to carry the "heavy burden" of demonstrating that this case is now moot as a result of the new state law.

## III.  Conclusion

Accordingly, AT&T's Motion to Amend the Entry of Final Judgment [Doc. # 91] is denied.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of July, 2008.